**R E V I S E D**

**February 25, 1998**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 96-31309

EXXON CORPORATION,

Plaintiff-Appellee,

versus

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

December 5, 1997

Before REAVLEY, BARKSDALE, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Appellant St. Paul Fire and Marine Insurance Company ("St. Paul") appeals the denial of its

motion for summary judgment and the grant of appellee Exxon Corporation's ("Exxon's") motion

for partial summary judgment. St. Paul contends that the district court erred in (1) its refusal to stay

this action pending the outcome of underlying state court personal injury actions, (2) its grant of

summary judgment in favor of Exxon on the attorney's fees issue, and (3) its declaration that there

are five occurrences of injury under the insurance policy rather than one. In response, Exxon filed

a motion to dismiss the appeal. For the following reasons, we deny Exxon's motion to dismiss the appeal and we affirm the district court's ruling regarding its grant of summary judgment in favor of Exxon.

**Factual Background**

In April 1989, Exxon closed a surface impoundment at its gas treating facility in Flomaton, Alabama. In order to dispose of the sludge that had accumulated at the facility, Exxon contracted with Land Treatment Systems, Inc. ("LTS") to receive the sludge at its waste facility near Morgan City, Louisiana. Exxon entered into a Bareboat Charter Party with McDonough Marine Service, a division of the Marmac Corporation ("Marmac") for the transportation of the sludge. Under the terms of the contract, Marmac provided insurance coverage to Exxon, naming Exxon as an additional assured and Exxon provided hull, protection & indemnity ("P&I"), and water pollution insurance. St. Paul was the insurance carrier.

The barge was manned by its captain and a deckhand. The barge was met by four employees of LTS, who collected the sludge and transported it to the disposal site. Subsequently, the two barge crewmembers and three of the LTS employees brought suit against Exxon claiming that they had suffered personal injuries as the result of inhaling the fumes from the sludge. Exxon notified St. Paul of the lawsuits, however, St. Paul denied coverage.

After settling one of the claims, Exxon and St. Paul agreed to settle their coverage dispute and to jointly fund settlements or pay judgments in each of the five cases. After a second case was settled pursuant to this agreement, a dispute arose between Exxon and St. Paul as to whether St. Paul's policy limit of $500,000 applied to the settlement agreement. Exxon then filed suit in federal district court seeking a declaratory judgment against St. Paul, asking the court to

2

determine: (1) that the policy provided Exxon coverage for the five claims; (2) that the payment of attorney's fees in defending the claims did not reduce the policy's limit of liability; (3) that each of the five claims was a separate "occurrence" under the policy; and (4) that St. Paul breached its duty of good faith and fair dealing.[1] At the time Exxon filed its motion, three of the five actions were still pending in Louisiana state court and St. Paul was not and is not a party to any of these actions.[2] Exxon's federal suit was assigned to Judge Okla Jones, who ordered both parties to file cross-motions for summary judgment on the coverage issue.[3] Judge Jones died while the motion was pending and Judge Stanford Duval was assigned to the case. On March 15, 1996, Judge Duval granted Exxon's motion for partial summary judgment and denied St. Paul's. St. Paul then filed a motion for a new trial and/or for rehearing and reconsideration and refiled its motion for a stay pending judgment in the state court actions. The motion was denied. The court then ordered the parties to file cross-motions for summary judgment on the issue of the number of occurrences. On November 14, 1996 the court issued a final judgment in favor of Exxon on the coverage issue, the effect of attorney's fees on the limit, and the number of occurrences. St. Paul timely appealed from the final judgment entered by the district court on November 15, 1996. Thereafter, Exxon filed a motion to dismiss the appeal.

---

[1] Two of the plaintiffs proceeded to trial together in Louisiana state court asserting claims under Louisiana state law. In that case, Judge McNulty concluded that plaintiffs' only remedy was under maritime law. On appeal, the First Circuit Court of Appeals for Louisiana concluded that the issue of whether plaintiffs were longshoremen was a question for the jury resulting in the possibility that plaintiffs could recover under state law.

[2] Since that time, one additional action has been settled. Currently, there are two unsettled actions.

[3] According to St. Paul, Judge Jones was unaware that the First Circuit Court of Appeals had reversed Judge McNulty's ruling.

**Exxon's Motion to Dismiss**

Before addressing the substance of St. Paul's claim, we must first address Exxon's motion to dismiss St. Paul's appeal. Exxon argues that St. Paul's appeal should be dismissed because the district court orders dated August 9, 1995 and June 5, 1996 refusing to stay the action were interlocutory orders not immediately subject to appellate review. Because of the district court's entry of a final judgment in this matter on November 15, 1996, however, Exxon's argument is unpersuasive. It is a well-settled rule of law that an appeal from a final judgment raises all antecedent issues previously decided. Dickinson v. Auto Center Manufacturing Company, 733 F.2d 1092, 1102 (5th Cir. 1983). Thus, once a final judgment is entered, all earlier non-final orders affecting that judgment may properly be appealed. Exxon argues in the alternative that should this court accept jurisdiction over St. Paul's appeal, it must nonetheless dismiss St. Paul's appeal for untimeliness. Exxon grounds this argument upon its own flawed timeline, failing to note once again that St. Paul is appealing the final judgment and not the interlocutory orders. Exxon's argument is without merit. St. Paul's appeal based on the district court's final judgment is timely.[4] We therefore conclude that we have appellate jurisdiction over this case.

**St. Paul's Claims**

We now turn to the district court's denial of St. Paul's motion to stay the federal court proceedings and its grant of partial summary judgment to Exxon. St. Paul argued before the district court that it would be more appropriate for the issues of coverage, policy interpretation, and bad faith to be litigated in each of the state court proceedings before entering the federal litigation phase of this claim. The district court denied that motion and we affirm its decision. Further, the district court

---

[4]Fed. R. App. P. 4(a)(1).

awarded partial summary judgment to Exxon regarding the issue of whether attorney's fees are covered under the policy. We also affirm this ruling.

**Standard of Review**

We note the proper standards of review for both aspects of this claim. The district court's action on a request for a stay is a matter of judgment and it is reviewed by the Court of Appeals only for abuse of discretion. Wilton v. Seven Falls Co., 515 U.S. 277, 115 S. Ct. 2137 (1995). We review a district court's grant of summary judgment de novo, applying the same standard of review as would the district court. See, e.g., Melton v. Teachers Ins. & Annuity Ass'n of Am., 114 F.3d 557, 559 (5th Cir.1997); Dawkins v. Sears Roebuck and Co., 109 F.3d 241, 242 (5th Cir.1997) (citing Cockerhan v. Kerr-McGee Chem. Corp., 23 F.3d 101, 104 (5th Cir.1995)). Summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Kinsey v. Farmland Industries, Inc., 39 F.3d 603 (5th Cir. 1994) (quoting Fed.R.Civ.P. 56(c)).

**St. Paul's Motion to Stay**

St. Paul sought to stay the instant proceedings based on the Supreme Court's decision in Wilton. In that case, the Supreme Court upheld a district court's decision to stay a federal declaratory judgment action in favor of pending state court litigation on parallel issues in order to avoid piecemeal litigation and to prevent forum shopping. In the instant case, St. Paul argued before the district court that the issue of coverage was not ripe for summary judgment because Exxon's negligence had not yet been determined in the state court proceedings. St. Paul further argues on appeal that though the "specific issues of coverage for Exxon and St. Paul's alleged bad faith were not present in the state court personal injury actions, what the state court had to say about the basis of Exxon's liability, if any, would not only be relevant to, but potentially dispositive of, Exxon's contention that it could only be liable in the capacity of a vessel owner."

6

The district court concluded that Exxon was acting as "vessel owner" and that there was a "causal connection" between the insured vessel and the injuries suffered which entitled Exxon to coverage for the personal injury claims asserted by the five plaintiffs. However, on appeal, St. Paul contends that the district court reversibly erred in deciding this issue prior to a determination of liability in the state court actions. Exxon rejects this argument, asserting that St. Paul's contention is not supported by law and if adopted by the court, would preclude a determination of liability in the three claims that have already been settled.

St. Paul's suggestion that determination of Exxon's liability in the state court suits is a prerequisite to a determination of coverage in this case is not supported by law. Indeed, the district court found the instant case distinguishable from Wilton because the federal and state causes of action do not encompass the same issues. This circuit has clearly held that in order to consider the propriety of a stay pending disposition of state court actions, the federal and state cases must be parallel, meaning that they involve the same parties and the same issues. Hartford Accident & Indemnity Company v. Costa Lines Cargo Services, Inc., 903 F.2d 352, 360 (5th Cir. 1990) (internal citations omitted); Mendiola v. Hart, 561 F.2d 1207, 1208 (5th Cir. 1977). As Exxon notes, there are no parallel state court proceedings where the issues of coverage, policy interpretation, and bad faith are being litigated. The underlying state court proceedings are strictly personal injury actions to which St. Paul is not a party. Thus, we conclude that the district court was well within its discretion in refusing to stay the instant proceedings.

Exxon maintains that a finding of liability is not necessary for it to recover under an insurance policy of this type. In an attempt to establish that a determination of actual liability is not required to recover under an indemnification policy, Exxon relies on Wisconsin Barge Line, Inc. v. Barge

7

Chem 300, 546 F.2d 1125 (5th Cir. 1977) and Terra Resources v. Lake Charles Dredging & Towing, 695 F.2d 828 (5th Cir. 1983).  In these cases, this court recognized that the general rule requiring "an indemnitee . . . [to] establish actual liability on his part to recover from an indemnitor" is not absolute and that an indemnitee may recover indemnity if he is able to demonstrate that he has either (1) tendered the defense of the action to the indemnitor, (2) the claim for indemnity is founded upon judgment, or (3) the indemnitee's claim is based upon a written contract of insurance or indemnification.  Id. at 832.

The instant case readily falls within the third exception to the general rule—that Exxon's claim is based upon a written contract for insurance or indemnification.  The insurance policy in question specifically provides that:

> It is agreed that if the Assured, as ship owners, *shall have become* liable to pay, and shall have in fact paid, any sum or sums in respect of any respo nsibility, claim, demand, damages and/or expenses or *shall become* liable for and shall pay any other loss arising from or occasioned by . . . loss of life or personal injury . . .  We will . . . pay to the Assured such proportion of the sum or sums so paid for such loss . . .

There can be no question that Exxon already has become liable to pay damages to three of the five plaintiffs in the underlying personal injury actions as the result of settlement agreements.  Thus, a loss has been suffered that is covered by the terms of the insurance contract and under that contract, St. Paul is required to indemnify Exxon for its damages.

**Attorney's Fees under the Insurance Policy**

The second major element of St. Paul's appeal centers on the issue of attorney's fees.  In its motion for summary judgment, St. Paul sought a declaration as a matter of law that the insurance policy in question provides for the deduction of attorney's fees and defense costs from the policy

8

limit. Exxon opposed St. Paul's motion and contended that the plain language of the policy does not provide for the deduction of attorney's fees and defense costs. In denying St. Paul's motion for summary judgment, the court essentially treated Exxon's opposition of St. Paul's motion as a cross-motion for summary judgment and entered judgment in favor of Exxon. On appeal, St. Paul argues that the district court (1) improperly entered summary judgment in favor of Exxon when it had not requested such action and (2) erred in construing the policy to exclude attorney's fees and defense costs from the aggregate limit.

In order to understand the district court's grant of summary judgment in this instance, it is important to examine the underlying policy implications that govern such relief. Federal Rule of Civil Procedure 56 provides the requirements for submission of a motion for, and subsequent grant of summary judgment. The Advisory Committee Notes to the rules indicate that the policy goal that animates Rule 56 is the prompt disposition of cases when there is no genuine issue of any material fact for the court to consider. In order to achieve this goal, the rule thus requires a court, under the proper conditions, to grant the relief to which a party is entitled even if the party has not demanded such relief. In Matter of Caravan Refrigerated Cargo, Inc., this court further explained the role of a district court in granting summary judgment. This court noted that "a district court may grant summary judgment for the non-movant *sua sponte*." 864 F.2d 388, 393 (5th Cir. 1989). The court further suggested that "when 'one party moves for summary judgment the district court, in an appropriate case, may grant summary judgment against the movant, even though the opposite party has not actually filed a motion for summary judgment.'" Id. at 393 (internal citation omitted). The doctrine of this Circuit, permitting the grant of summary judgment, in the appropriate case, when there is no genuine need for trial—even if such action was not requested in the summary judgment

9

papers—is compatible with the purpose of the rule.  Examination of the ruling of the district court in the instant case indicates that it, too, was compatible with this Circuit's precedent as well as the underlying purpose of the rule.  Thus, we hold that the district court's grant of summary judgment was proper.

That Exxon did not file a proper motion for summary judgment does not preclude the district court in the instant action from granting summary judgment in its favor.  St. Paul contends, however, that in order for the district court to grant summary judgment to a non-moving party pursuant to Rule 56(c), there must be (1) no issue of material fact that precludes summary judgment and (2) the court must provide proper notice to the adverse party of its intention to grant summary judgment against it.  St. Paul maintains that the district court's finding of ambiguity in the insurance policy indicates that there was a genuine material issue of fact.  We find this argument without merit.  The interpretation of the policy is a purely legal issue which turns on specific policy language.  What the policy does or does not say is not a factual, but a legal dispute.  St. Paul alleges that it was not provided notice of the district court's intention to render summary judgment on the attorney's fees issue as required by Rule 56(c), thus depriving it of the opportunity to submit affidavits and other materials that would demonstrate the existence of genuine issues of material fact precluding summary judgment.  As Exxon points out, St. Paul had ample opportunity to present all evidence of disputed issues of material fact.  The fact that St. Paul did not object to the district court's action or request a new trial or rehearing on its motion indicates that St. Paul had no further evidence to present or argument to make regarding any material dispute of fact.

The second element of St. Paul's argument involving the grant of summary judgment is the district court's interpretation of the insurance policy.  St. Paul contends that the policy contains a

10

separate duty to defend and that the district court erred in treating it as if it were a standard liability policy. The indemnity policy in question defines the amount that the insurer will pay in the following terms:

> We will, subject to the reservations herein mentioned, pay to the Assured such proportion of the sum or sums so paid, for such loss, as our respective subscriptions bear to the policy value of the ship hereby insured, and in case the liability of the Assured has been contested, with the consent in writing of two-thirds of the Underwriters on the ship hereby insured in the amount, we will, subject to the conditions of the policy, also pay a like proportion of the costs which the Assured shall thereby become liable for and shall pay.

In paragraph 10 entitled "Limit of Liability," the P&I policy provides,

> Notwithstanding anything contained herein to the contrary, it is understood and agreed that the total aggregate limit of liability of this Section III is $500,000. Or hull value, whichever is greater, all claims, costs and expenses arising out of any one accident or occurrence regardless of the number of vessels or coverages involved. Irrespective of this limit, the limit as respects an Additional Assured will not exceed the limit agreed to in the Charter Party. It is further understood and agreed any applicable deductible amount is to be included within the aggregate limit amount.

In the subject case, the district court held that "because the policy language does not explicitly include 'fees' or 'costs in defending this claim' in this clause and because the costs of defense are couched in terms of the insurer 'also paying' these costs," the policy limit was not comprehensive and did not include all defense costs and expenses. On appeal, St. Paul asserts that this holding was in error and that legal costs are a part of the policy limits to be included in the exhaustion of protection and indemnity or liability policies. See Taylor v. Lloyd's Underwriters of London, 1994 WL 118303 (E.D. La. March 25, 1994). Louisiana state courts have held that, "[i]t is the general law and practice in Protection and Indemnity insurance for legal expenses incurred in defending a liability covered by the policy to be treated as part of the overall claim. That claim [inclusive of legal expenses] is limited

11

by the amount insured in the primary policy." See id. (citing Leslie Buglass, *Marine Insurance and General Average in the United States*, 415 (3rd Ed. 1991)). Moreover, this circuit has previously held that "indemnification agreements contemplate payment for attorney's fees incurred in litigation with third parties concerning the matter indemnified against, regardless of whether they say so." E.C. Ernst, Inc. v. Manhattan Construction Co., 551 F.2d 1026, 1037 (5th Cir. 1977) (holding that the term "costs" is broad enough to encompass recovery of relevant attorney's fees). Inclusion of attorney's fees is presumed to have been the intent of the drafter unless the agreement explicitly says otherwise. Id. at 1038.

Exxon brings to our attention Offshore Logistic Services, Inc. v. Mutual Marine Office, Inc., 462 F. Supp. 485, 495 (E.D. La. 1978), to support the contention that the issue of deductiblity of defense costs from the limit of liability in a marine protection and indemnity policy must be decided by analyzing the specific policy language. Exxon further argues that if such a policy provision is found to be ambiguous, it is to be construed against the drafter and in favor of the insured. Reynolds v. Select Properties, Ltd., 634 So.2d 1180, 1183 (La. 1994). Because both limit of liability clauses in the policy in question are silent as to the deductibility of attorney's fees and defense costs, the ambiguity is to be construed in favor of the insured and a provision which seeks to narrow an insurer's obligation is to be construed against the insurer. Id. Therefore, we affirm the district court's holding and conclude that St. Paul's position that attorney's fees can be deducted from the policy limit is not supported by the words of the insurance policy itself.

**The Number of Occurrences or Accidents Covered under the Policy**

St. Paul's third and final argument asks us to decide whether the district court erred in determining that the personal injuries underlying this action constituted five (5) occurrences or

12

accidents within the insurance policy. St. Paul contends that the district court erred in affording Exxon "special interpretation of this policy favoring coverage." St. Paul suggests that the number of occurrences should be determined by the causes rather than the injury. Under this reasoning, St. Paul would have the court determine that there was one (1) occurrence rather than five (5). St. Paul argues that the district court's holding is in error particularly because of Exxon's size and concurrent "deep pockets," which would allow it to provide for uncovered claims. The district court was not persuaded by this argument and noted that in the case of Lombard v. Sewerage and Water Board of New Orleans, 284 So.2d 905 (La. 1973), the Louisiana Supreme Court interpreted the term occurrence in just such a repeated exposure situation. That court determined that "when the separate property of each plaintiff was damaged by a series of events, one occurrence was involved insofar as each property owner was concerned." Id. at 915. Comparing the facts in Reynolds v. Transcontinental Insurance Company, 1995 W.L. 16795 (E.D. La. Jan. 17, 1995) to those in the instant case, Exxon argues that because the alleged injuries were discrete and occurred over a period of time, they should properly be considered separate occurrences. Further, Exxon argues, because the St. Paul policy contains no definition of occurrence, the ambiguity of the contract should be resolved in favor of the insured. We find this argument persuasive and conclude that the district court did not err in its interpretation of the policy.

13

## Conclusion

Exxon's motion to dismiss St. Paul's appeal is denied. We find that the district court's denial of St. Paul's motion to stay the federal proceedings, as well as its grant of partial summary judgment to Exxon were proper. For the foregoing reasons, we AFFIRM the judgment of the district court.