# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 10, 2011

Lyle W. Cayce
Clerk

No. 09-30549

STEPHEN MARSHALL GABARICK, on behalf of himself and all others similarly situated; Et Al,

Plaintiffs

v.

LAURIN MARITIME (AMERICA) INC.; WHITEFIN SHIPPING COMPANY LIMITED,

Defendants – Appellants

v.

D.R.D. TOWING COMPANY, LLC,

Defendants – Appellee

--------------------------------------------------------------------------------------------------------------

AUSTIN SICARD; Et Al,

Plaintiff

v.

LAURIN MARITIME (AMERICA) INC.; WHITEFIN SHIPPING COMPANY LIMITED,

Defendants – Appellants

v.

D.R.D. TOWING COMPANY, LLC,

Defendants – Appellee
--------------------------------------------------------------------------------------------------------------

IN RE: IN THE MATTER OF THE COMPLAINT OF WHITEFIN SHIPPING COMPANY LIMITED, OWNER AND MANAGING OWNER OF M/V TINTOMARA, LAURIN MARITIME AB AND ANGLO-ATLANTIC STEAMSHIP LIMITED FOR EXONERATION FROM OR LIMITATION OF LIABILITY

WHITEFIN SHIPPING COMPANY LIMITED, As owner and Managing owner of the M/V Tintomara, petitioning for exoneration from or Limitation of Liability; LAURIN MARITIME (AMERICA) INC., As owner and Managing owner of the M/V Tintomara, petitioning for exoneration from or Limitation of Liability; LAURIN MARITIME AB; ANGLO-ATLANTIC STEAMSHIP LIMITED

Petitioners – Appellants

v.

D.R.D. TOWING COMPANY, LLC

Claimant – Appellee
--------------------------------------------------------------------------------------------------------------

GEORGE C. MCGEE; ET AL

Plaintiffs

v.

LAURIN MARITIME (AMERICA) INC.; WHITEFIN SHIPPING COMPANY LIMITED

Defendants – Appellants

v.

D.R.D. TOWING COMPANY, LLC

Defendant – Appellee
--------------------------------------------------------------------------------------------------------------

BERNADETTE GLOVER, on behalf of herself and all others similarly situated

                                        Plaintiff

v.

LAURIN MARITIME (AMERICA) INC.; WHITEFIN SHIPPING COMPANY LIMITED

                                        Defendants – Appellants

v.

D.R.D. TOWING COMPANY, LLC

                                        Defendant – Appellee

---------------------------------------------------------------------------------------------------------

IN RE: IN THE MATTER OF THE COMPLAINT OF AMERICAN COMMERCIAL LINES LLC, OWNER OF BARGE DM-932 FOR EXONERATION FROM OR LIMITATION OF LIABILITY

AMERICAN COMMERCIAL LINES LLC, As Owner of Barge DM-932, Praying for Exoneration from or Limitation of Liability

                                        Petitioner – Appellant

v.

LAURIN MARITIME AB; WHITEFIN SHIPPING COMPANY LIMITED; ANGLO-ATLANTIC STEAMSHIP LIMITED; LAURIN MARITIME (AMERICAN) INC.

                                        Movants – Appellants

v.

CSILLA FEKETE; ET AL

                                        Defendants

---------------------------------------------------------------------------------------------------------

JEFFERSON MAGEE, Individually and on behalf of all others similarly situated; ET AL

Plaintiffs

v.

WHITEFIN SHIPPING COMPANY LIMITED; LAURIN MARITIME AB

Defendants – Appellants

v.

D.R.D. TOWING COMPANY LLC

Defendant – Appellee

-------------------------------------------------------------------------------------------------

JAMES ROUSSELL; ET AL

Plaintiffs

v.

LAURIN MARITIME (AMERICA) INC.; WHITEFIN SHIPPING COMPANY LIMITED

Defendants – Appellants

v.

D.R.D. TOWING COMPANY, LLC

Defendants – Appellee

-------------------------------------------------------------------------------------------------

JAMES JOSEPH, on behalf of himself and all others similarly situated

Plaintiff

v.

LAURIN MARITIME (AMERICA) INC.; WHITEFIN SHIPPING COMPANY LIMITED

Defendants – Appellants

v.

D.R.D. TOWING COMPANY, LLC

Defendants – Appellee

----------------------------------------------------------------------------------------------------

VINCENT GRILLO, Individually and on behalf of all others similarly situated; ET AL

Plaintiffs

v.

D.R.D. TOWING COMPANY LLC

Defendant – Appellee

v.

WHITEFIN SHIPPING COMPANY LIMITED; LAURIN MARITIME AB

Defendants – Appellants

----------------------------------------------------------------------------------------------------

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA

Plaintiff – Appellee

v.

AMERICAN COMMERCIAL LINES, LLC; AMERICAN COMMERCIAL LINES, INC.; LAURIN MARITIME AB; LAURIN MARITIME (AMERICA) INC.

Defendants – Appellants

v.

D.R.D. TOWING COMPANY, LLC; D.R.D TOWING GROUP, LLC; WAITS, EMMETT & POPP, LLC; DAIGLE, FISSE & KESSENICH

Defendants – Appellees

----------------------------------------------------------------------------------------------------

IN RE: IN THE MATTER OF THE COMPLAINT OF D.R.D. TOWING COMPANY, INC., OWNER PRO HAC VICE OR ALLEGED OWNER PRO HAC VICE OF THE M/V MEL OLIVER, FOR EXONERATION FROM OR LIMITATION OF LIABILITY

D.R.D. TOWING COMPANY, INC., as owner pro hac vice or alleged owner pro hac vice of the M/V Mel Oliver

Petitioner – Appellee

v.

LAURIN MARITIME AB; WHITEFIN SHIPPING COMPANY LIMITED; ANGLO-ATLANTIC STEAMSHIP LIMITED; LAURIN MARITIME (AMERICA) INC.

Claimants – Appellants

-------------------------------------------------------------------------------------------------------

DONNETTA CHERAMIE, individually and on behalf of all others similarly situated

Plaintiff

v.

D.R.D. TOWING COMPANY, LLC

Defendant – Appellee

v.

WHITEFIN SHIPPING COMPANY LIMITED; LAURIN MARITIME AB

Defendants – Appellants

-------------------------------------------------------------------------------------------------------

TRI NATIVE CONTRACTORS, INC.; ET AL

Plaintiffs

v.

D.R.D. TOWING COMPANY, LLC

                                    Defendant – Appellee

v.

WHITEFIN SHIPPING COMPANY LIMITED; LAURIN MARITIME AB

                                    Defendants – Appellants
--------------------------------------------------------------------------------------------------------
IN RE: IN THE MATTER OF THE COMPLAINT OF AMERICAN
COMMERCIAL, LLC, OWNER OF M/V MEL OLIVER, FOR
EXONERATION FROM OR LIMITATION OF LIABILITY

AMERICAN COMMERCIAL LINES, LLC, as owner of the M/V Mel Oliver
praying for exoneration from or limitation of liability

                                    Petitioner – Appellant

v.

LAURIN MARITIME (AMERICA) INC.; LAURIN MARITIME AB;
WHITEFIN SHIPPING CO. LIMITED; ANGLO-ATLANTIC STEAMSHIP
LIMITED

                                    Appellants

v.

JAHDA MUHAMMAD

                                    Defendant
--------------------------------------------------------------------------------------------------------
KEVIN A. PETTIGREW

                                    Plaintiff

v.

D.R.D. TOWING COMPANY, L.L.C.

                                    Defendant – Appellee

v.

No. 09-30549

LAURIN MARITIME (AMERICA) INC.; LAURIN MARITIME AB; WHITEFIN SHIPPING CO. LIMITED; ANGLO-ATLANTIC STEAMSHIP LIMITED

Movants – Appellants

_____

No. 09-30809

_____

STEPHEN MARSHALL GABARICK, on behalf of himself and all others similarly situated; ET AL

Plaintiffs

v.

LAURIN MARITIME (AMERICA) INC; ET AL

Defendants

----------------------------------------------------------------------------------------------------------

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA

Plaintiff – Appellee

v.

D.R.D. TOWING COMPANY, L.L.C.; AMERICAN COMMERCIAL LINES L.L.C.; AMERICAN COMMERCIAL LINES, INC.; ANGLO-ATLANTIC STEAMSHIP LIMITED; LAURIN MARITIME AB; LAURIN MARITIME (AMERICA), INC.

Defendants - Appellants

v.

WHITEFIN SHIPPING COMPANY LIMITED

Appellant

8

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, OWEN, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The M/V TINTOMARA, an ocean-going tanker, collided with the barge DM-932, in the tow of the M/V MEL OLIVER, splitting the barge in half and spilling its cargo of oil into the Mississippi River. Following the filing of numerous lawsuits, including personal injury claims by the crew members and class actions by fishermen, the primary insurer filed an interpleader action, depositing its policy limits with the court.

We are asked to review allocations of interpleader funds as well as the district court's finding that the maritime insurance policy's liability limit included defense costs. We affirm the district court's decision that defense costs erode policy limits but are persuaded that its orders allocating court-held funds among claimants were tentative and produced no appealable order.

I.

The TINTOMARA was owned and operated by Laurin Maritime (America), Inc., Laurin Maritime AB, Whitefin Shipping Co. Limited, and Anglo-Atlantic Steamship Limited (collectively, "Laurin Maritime"). American Commercial Lines, LLC owned the tug, barge, and fuel oil. D.R.D. Towing, LLC provided the crew for the tug boat pursuant to a bareboat charter.

The towing company was covered by a protection and indemnity policy issued by Indemnity Insurance Company of North America ("IINA"). This policy contained the SP-23 Form, with some modifications, and provided a $1 million limit of liability for any single occurrence, with a $15,000 deductible. After the

collision, the towing company and the barge owner[1] demanded that IINA defend and indemnify them. IINA responded with an interpleader action for determination of its rights and obligations under the policy. Around the time of its filing, IINA deposited $985,000 into the registry of the court, which was its full liability limit less the deductible.

The barge owner moved to dismiss under Federal Rules of Civil Procedure Rule 12(c), arguing that IINA could not avoid its obligation to defend by depositing its policy limits with the court. The district court denied the motion to dismiss the interpleader action and held that IINA had a duty to reimburse defense costs but no duty to defend.

The towing company and the barge owner then sought release of funds to recover defense costs. IINA responded that defense costs were included within the policy limits—that is, monies paid for defense costs would come from funds capped by the policy limits. The district court agreed and found that defense costs eroded the limit of liability.[2] Further, the court granted the towing company's motion for release of funds and denied the barge owner's motion.

The barge owner and Laurin Maritime timely filed notices of interlocutory appeal under 28 U.S.C. § 1292(a)(3), challenging the district court's decision that defense costs eroded the liability limits and allocating interpleader funds. We have jurisdiction over interlocutory appeals from orders that "determin[e] the rights and liabilities of the parties to admiralty cases."

Shortly after filing its notice of appeal, the barge owner sought and obtained a Rule 54(b) certificate covering the same order it had previously

---

[1] The barge owner originally acted in this suit as an additional insured under the P&I policy. On appeal, the barge owner abandons its additional insured status and only asserts its rights as a claimant under the Louisiana Direct Action Statute.

[2] Gabarick v. Laurin Maritime (America) Inc., 635 F. Supp. 2d 499 (E.D. La. 2009).

appealed. The parties then appealed the 54(b) judgment, which was consolidated with the interlocutory appeals.[3]

II.

IINA questions this court's jurisdiction, arguing in part that the § 1292(a)(3) appeals notice divested the district court of its authority to enter a Rule 54(b) certification. We do as a matter of course examine our own jurisdiction.[4]

The barge owner and Laurin Maritime both appealed the order before the district court entered a Rule 54(b) final judgment. Although the filing of a notice of appeal ordinarily divests the district court of jurisdiction over those aspects of the case involved in the appeal,[5] the district court retains jurisdiction to enter a Rule 54(b) certification.[6] Therefore, we have jurisdiction under Rule 54(b).

However, we are unpersuaded that there was a final ruling on the release of funds. The district court did not permanently deny funds to the barge owner, but rather stated, "payment to [the barge owner] at this time would not be equitable."[7] The allocation of funds is an ongoing matter the parties are addressing with the district court.

Before a district court grants a Rule 54(b) certificate, the court must determine that the judgment is final "in the sense that it is 'an ultimate

---

[3] ACL (the barge owner) is the primary appellant on the defense costs erosion issue, with DRD (the towing company) and Laurin Maritime joining ACL's arguments. ACL's second attack upon the distribution of funds was not joined by DRD and was opposed by Laurin Maritime.

[4] Borne v. A&P Boat Rentals No. 4, Inc., 755 F.2d 1131, 1133 (5th Cir. 1985).

[5] Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982).

[6] See Swope v. Columbian Chems. Co., 281 F.3d 185, 191–92 (5th Cir. 2002).

[7] Gabarick, 635 F. Supp. 2d 499 at 513 (emphasis added).

disposition of an individual claim.'"[8]  Here, the allocation of interpleader funds was not an ultimate disposition, evidenced by the court's implication that the barge owner might later be entitled to some of the court-held funds.  Although the decision to certify is reviewed for abuse of discretion, we still must "scrutinize the district court's evaluation . . . so as to prevent piecemeal appeals in cases which should be reviewed only as single units."[9]  We decline to express an opinion regarding the allocation or denial of funds.  The tentative character of the "ruling" is equally fatal to jurisdiction under § 1292(a)(3).

The barge owner asks this court to confirm its status as a direct claimant under the Louisiana Direct Action Statute, but the district court did not rule on this claim in the appealed order.  Therefore, we will not address this issue.[10]

III.

We review a district court's interpretation of an insurance contract de novo.[11]  "[I]n the absence of a specific and controlling federal rule," the interpretation of marine insurance policies is "to be determined by reference to appropriate state law."[12]  Here, there is no entrenched maritime law addressing whether legal expenses are included within or in addition to a protection and indemnity policy's liability limit.  However, marine insurance commentators have recognized that defense costs are typically included within the P&I policy's

---

[8] Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 7 (1980) (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436 (1956)).

[9] Id. at 10; see also Lockett v. General Finance Loan Co. of Downtown, 623 F.2d 1128, 1129 (5th Cir. 1980).

[10] See Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993).

[11] Travelers Lloyds Ins. Co. v. Pac. Emp'rs. Ins. Co., 602 F.3d 677, 681 (5th Cir. 2010).

[12] Albany Ins. Co. v. Kieu, 927 F.2d 882, 886 (5th Cir. 1991) (internal quotation marks omitted).

liability limit.[13]  The Maritime Law Association of the United States instructs that for P&I policies "[t]here is no coverage for legal expenses in excess of the policy limits, such expenses being included within, and no[t] in addition to, policy limits."[14]  P&I policies do not ordinarily create a duty to defend[15] and are indemnity policies, not liability policies.  With only a duty to pay covered claims and no duty to defend, reimbursement of defense costs must be footed on the indemnification, which is limited to the agreed upon policy limit.[16]

Turning to Louisiana law, courts interpreting insurance contracts should "seek to determine the parties' common intent, as reflected by the words in the policy."[17]  Words used in the policy "must be given their generally prevailing

---

[13] See CHARLES M. DAVIS, MARITIME LAW DESKBOOK 575 (2010) ("Generally, costs, fees and expenses of defending against insured claims is included in the limits of a P & I policy, at least with respect to indemnity policies that include no separate duty of the insurer to provide a defense."); id. (noting that the SP-23 form is ambiguous with respect to defense costs when the insurer, rather than the insured, employed the defense counsel); Stephen V. Rible, A Juxtaposition of Hull and Protection & Indemnity Coverages, 83 TUL. L. REV. 1189, 1199 (2009) ("Legal costs are a part of the policy limits included in the exhaustion of P&I policies.").

[14] Warren M. Faris & Mat M. Gray III, Costs of Defense, Notice and Settlement of Claim, Assistance and Cooperation, in MARINE PROTECTION & INDEMNITY POLICY ANNOTATIONS PROJECT 65, 65 (Simon Harter ed., 2001), available at http://www.mlaus.org/archives/library/530a.pdf.  The First Circuit has also held that language similar to the SP-23 unambiguously included defense costs in the policy limit. Geehan v. Trawler Arlington, Inc., 547 F.2d 132 (1st Cir. 1976).

[15] See DAVIS, supra note 13, at 574; William E. O'Neil, Insuring Contractual Indemnity Agreements Under CGL, MGL, and P & I Policies, 21 TUL. MAR. L.J. 359, 373 (1997).  As noted above, the district court has found that the policy in dispute here did not provide a duty to defend and the parties did not appeal that decision.

[16] See DAVIS, supra note 13, at 574–75; cf. N. Am. Speciality Ins. Co. v. Royal Surplus Lines Ins. Co., 541 F.3d 552, 559 (5th Cir. 2008) (noting that "[l]iability insurance policies often have two components: defense and indemnity," and when the policy limits only apply to the indemnity section, the obligation to defend is not capped by the policy limits).  When there is no "defense" component of the insurance policy, the duty to defense must be encompassed within the indemnity provision and corresponding limit of liability.

[17] Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011).

meaning."[18] "When those words are clear, explicit, and lead to no absurd consequences, the contract must be interpreted within its four corners . . . ."[19]

"A provision in an insurance contract is ambiguous if it is susceptible to two or more reasonable interpretations or if the intent of the parties cannot be ascertained from the language employed."[20] "If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured."[21] However, Louisiana's presumption in favor of the insured does not apply where the insured is a sophisticated commercial entity that drafted the policy or used an agent to secure the desired policy provisions.[22]

With regard to P&I policies, we have noted that the general law in Louisiana is "for legal expenses incurred in defending a liability covered by the policy to be treated as part of the overall claim. That claim [inclusive of legal expenses] is limited by the amount insured in the primary policy."[23] Thus, the barge owner must present evidence that this contract should be treated differently than traditional Louisiana P&I policies.

IV.

The towing company's insurance contract sets forth three distinct but related coverages: 1) the hull and machinery coverage (excluding collision

---

[18] LA. CIV. CODE ANN. art. 2047.

[19] Seacor, 635 F.3d at 680 (citing Peterson v. Schimek, 98-1712 (La. 3/2/99), 729 So. 2d 1024, 1031).

[20] Six Flags, Inc. v. Westchester Surplus Lines Ins. Co., 565 F.3d 948, 955 (5th Cir. 2009).

[21] La. Ins. Guar. Ass'n. v. Interstate Fire & Cas. Co., 630 So. 2d 759, 764 (La. 1994).

[22] Six Flags, 565 F.3d at 958 (interpreting Louisiana law).

[23] Exxon Corp. v. St. Paul Fire & Marine Insurance Company, 129 F.3d 781, 787 (5th Cir. 1997) (internal quotation marks omitted) (alteration in original).

liability), 2) collision and towers liability, and 3) protection and indemnity coverage. The collision and P&I policies are at issue here. For P&I coverage, the contract is based on a standard maritime insurance form, SP-23, with some modifications, known as manuscript provisions. One modification is the addition of a collision and towers liability clause.

The SP-23 Form provides coverage for "[c]osts, charges, and expenses, reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder in respect of the vessel named herein, subject to the agreed deductibles applicable, and subject further to the conditions and limitations hereinafter provided." Under the conditions subsequently provided, the policy states: "Liability hereunder in respect of any one accident or occurrence is limited to the amount hereby insured." Giving these words their generally prevailing meanings, the policy provides coverage for the insured's defense subject to the conditions of the overall policy, including the liability limit. There is no ambiguity in the SP-23 Form on the erosion of policy limits by payment of defense costs.

V.

The barge owner urges the agreement is ambiguous, in part because of language from the Collision and Towers Liability Clause, which was added as a manuscript provision and is not part of the SP-23 Form. This clause reads:

(a) if the vessel hereby insured shall come into collision with any other vessel . . . or shall cause her tow to come into collision with any other vessel . . . and the Insured or the Surety, in consequence of the insured vessel being at fault, shall become liable to pay and shall pay . . . we, the Underwriters, will pay the Insured or the Surety, whichever shall have paid, such proportion of such sum or sum so paid provided always that our liability shall not exceed the limit of liability afforded under this policy;

(b) and in cases where the liability of the Vessel has been contested or proceedings have been taken to limit liability,

15

> with our consent in writing, we will also pay the costs which
> the Insured shall thereby incur or be compelled to pay.

In addition to these sections, the collision clause excludes coverage if the insured's liability arises from either personal injury claims or oil spills.

The barge owner points to our decision in Exxon Corp. v. St. Paul Fire & Marine Insurance Company, where we found that defense costs were not included within the P&I liability limit in a policy with similar language.[24] Exxon's policy read:

> We will, subject to the reservations herein mentioned, pay to the Assured such proportion of the sum or sums so paid, for such loss, as our respective subscriptions bear to the policy value of the ship hereby insured, and in case the liability of the Assured has been contested, with the consent in writing of two-thirds of the Underwriters on the ship hereby insured in the amount, we will, subject to the conditions of the policy, also pay a like proportion of the costs which the Assured shall thereby become liable for and shall pay.[25]

The barge owner asserts that because its policy, like the one in Exxon, includes the term "also pay," the policy is at least ambiguous as to whether defense costs are included within the liability limit. More likely, the argument continues, "also pay" demands that defense costs be excluded from the regular liability limit. The barge owner urges that the similarity in the language between this clause and Exxon's clause requires this court to find an ambiguity in the policy, as we did in Exxon.

This reasoning is flawed. First, Exxon involved a personal injury suit based on inhalation of noxious fumes, not a collision.[26] Therefore, the "also pay" language must have been included in the P&I policy itself. By contrast, here,

---

[24] 129 F.3d 781 (5th Cir. 1997).

[25] Id. at 787 (emphasis added).

[26] Id. at 783.

the SP-23 Form and other P&I elements of the policy unambiguously include defense costs within the liability limit. This leaves the barge owner's contest only applying to the collision clause's "also pay" language, and that language here will not carry the freight.

The barge owner asserts in its brief that the collision clause "is indisputably triggered in this case because the liability arises out of a collision involving a towed vessel." In a footnote, the barge owner then describes its claims for loss of barge and cargo, for wreck removal, and cleanup expenses, as well as numerous claims for property damage by commercial fishermen. However, all of the claims mentioned would be excluded from the collision clause coverage. The collision coverage refuses to indemnify the insured for damages arising out of "removal or disposal of obstructions, wrecks or their cargoes under statutory powers or otherwise pursuant to law;" "cargo or other property on or the engagements of the Vessel;" "loss of life, personal injury or illness;" and "the discharge, spillage, emission or leakage of oil, petroleum products, chemicals or other substances of any kind or description whatsoever." Further, loss or damages to vessels owned by the insured are also excluded from collision coverage. Therefore, all claims pointed to by the barge owner are excluded from collision coverage, and any recovery must come under the standard P&I section of the policy, not its collision clause.

That the parties added a collision provision to the P&I section does not necessarily indicate the collision coverage is subject to the benefits and requirements of the other P&I coverages.[27] Commentators, including one relied upon by the barge owner, explain that a collision clause "is a separate contract

---

[27] See Ins. Co. of N. Am. v. Board of Commissioners of the Port of New Orleans, 733 F.2d 1161, 1166 (5th Cir. 1984) (discussing marine insurance policies and noting that "[a]lthough helpful, the label is not conclusive").

which provides coverage against certain liabilities to third parties."[28]   Any ambiguity created by the "also pays" language is restricted to the collision clause and does not infect the main P&I provisions.

Even if this policy were ambiguous, the barge owner would not automatically be entitled to a presumption favoring its interpretation, as was the case in Exxon. Again, Louisiana does not apply the presumption in favor of the insured when a broker has negotiated the policy on the insured's behalf.  Both the barge owner and IINA are sophisticated parties, and it is undisputed that Marsh, an insurance broker, issued the policy.  Although the barge owner now implies that Marsh was acting as an agent for IINA, in the district court, the towing company asserted that the policy at issue here "was a 'manuscript' or 'specifically written' policy that was prepared by [the towing company]'s broker, Marsh.'"[29]  Given that the towing company arrived at its policy using a broker, the presumption in favor of the insured does not apply.[30]

In sum, the barge owner's assertions of ambiguity demand reliance upon the collision clause, which is not only severable but also inapplicable because all of the damages incurred are excluded from that coverage.  Returning to the pure P&I coverage, the policy is clear that defense costs were intended to be included within the policy limits.  This P&I policy is unambiguously written against the backdrop of traditional principles of maritime law that defense costs erode P&I limits of liability.  It is evident that viewed objectively the parties expectations

[28] See LESLIE J. BUGLASS, MARINE INSURANCE AND GENERAL AVERAGE IN THE UNITED STATES 382 (emphasis added).

[29] Memorandum by DRD Towing in Response to/opposition to Motion of ACL to Declare Defense Costs Outside the Limits Under the IINA Primary Policy and to Release Funds to ACL at 2, Gabarick et al v. Laurin Maritime (America) Inc. et al, No. 2:08-cv-04007-ILRL-KWR (E.D. La. Jan. 19, 2009), ECF No. 575.

[30] See Six Flags, 565 F.3d at 958 (noting that "the presumption does not apply where the insured is a sophisticated commercial entity that itself drafts or utilizes its agent to secure desired policy provisions").

were as we have today held.  For want of jurisdiction, we decide nothing more regarding allocation of the court-held funds.  AFFIRMED in part; DISMISSED in part.